## No. XXVII.

### WM. H. BINGE AND JAS. BLAIR V. SAMPSON SMITH.

(See Note 76.)

*Appeal from Red River County.*

JONES (WILLIAM J.), JUSTICE.—This case is brought up by writ of error from the District Court of Red River County, upon a judgment rendered therein at the spring term of 1844, and the record presents the following facts: Suit was instituted by Sampson Smith against William H. Binge as the maker, and James Blair as indorser of a promissory note, made by said Binge to said Blair and indorsed by him to the defendant in error, for the sum of $300, payable on or before the 1st day of January, 1843. The defendants, after being duly cited, failing to appear and answer the plaintiff's petition, judgment by default nisi was rendered against them.

Upon an inspection of the record by the plaintiffs in error several grounds are assigned as causes of reversal of the judgment rendered in the district court. We will only examine the first and second assignments of error.

1. The cause of action being a joint contract made by Binge and Titus, the said Titus, or in case of his decease, his legal representative should have been sued; or the plaintiff's petition should have averred that some legal steps had been taken against the said Titus, or in case of death, against his representative.

2. That the maker and indorser, although sued, could not be properly joined in the same action.

The first ground of error is not sustained either by the common law or by out statutes relating to successions. At common law it is clear, in case of a *joint* contract, if one of the parties die the survivor alone can be sued. In equity the principal and the legal representative of the deceased security may be joined; but as the plaintiff had his option, and he alone can be injured by the failure to join the principal and the representative of the deceased security in his action, it can not be considered error in the plaintiff to sue the principal alone. The security being sued and the principal omitted, might be cause of error, without an averment sufficient in law to excuse such omission. But the seventeenth and eighteenth sections of the act of Congress regulating the settlement of successions, require that every claimant against a succession shall present his claim to the executor or administrator before suit is commenced, and if accepted by him, shall be ranked among the acknowledged debts against the estate. If so accepted and placed among the acknowledged debts of the succession, the plaintiff could not have *sued* the representative of Titus.

Gregory, 32 T., 452; Moss v. Witcher, 35 T., 388; Rodgers v. Bass, 46 T., 505; Jackson v. Elliott, 49 T., 62; Allen v. Pennell, 51 T., 165; Brown v. Cheno-

Upon the second assignment of error, that the maker and indorser could not be properly joined in the same action, the common law authorities, although well settled, are not applicable to this case; and the court here would not feel itself authorized to vary a practice established by such high authority, if it were not that the spirit and intent of our own local legislation justify us in making the departure.

The acts of Congress of December 22, 1836, and January 25, 1840, although they do *not require* the maker and indorser of a promissory note to be sued together, yet they clearly indicate, from their peculiar phraseology, that they *may* be joined in one and the same action, if sued *simultaneously.* The language of the first statute is, that "no person shall be sued as indorser or security, unless suit has been first or simultaneously commenced against the principal; provided the principal is within the jurisdiction of the courts of the Republic."

Indorsers and securities seem, by this statute, to have been placed upon the same footing. It can not be doubted that the principal and security must be joined in the same action, if both be living. May we not then fairly raise the presumption that the statute, in coupling security and indorser, intended to give the same remedy against maker and indorser as against principal and security, if both were sued *simultaneously?*

But the statute was not considered by Congress a sufficient protection to securities and indorsers, and the act of January 25, 1840, dispensing with the necessity of protest, after referring to drawers, indorsers and assignors, enacts, that "every such party (meaning drawers, indorsers and assignors) shall be held responsible as *security* for the final payment of a promissory note, check, draft," etc. This statute, so obviously intended to guard securities and indorsers against the delays and frauds of the holders of negotiable or assignable paper, recognizes the indorser as a *security* in express terms; and to that extent makes the law appertaining to principal and security equally applicable to drawer and indorser.

The statute of 1840 does not imperatively require, as it does not expressly exclude, the joinder of the maker and indorser. Under its provisions, the maker may be sued at the *first* term of the district court (or at the second term for good cause of failure shown) after the obligation falls due, and the latter may be cited at any subsequent term; but under the provisions of the act of 1836, still in force, if the maker and indorser be sued *simultaneously,* they may and should be joined in the same action.

This practice would prevent a multiplicity of suits and an accumulation of costs, which courts of justice should ever seek to avoid.

worth, 51 T., 469; Matlock v. Glover, 63 T., 231; Roundtree v. Stone, 81 T., 299; Allison v. Ins. Co., 87 T., 593; McCarty v. Brackenridge, 1 T. C. A., 170; Llano Improvement Co. v. Cross, 5 T. C. A., 175; Krueger v. Klinger, 10 T. C. A., 576; Sparks v. Coats, 22 T. C. A., 455; Sanders v. Atkinson, 1 App. C., sec. 1326; Wheeler v. Roberts, 2 App. C., sec. 128; Jensen v. Hays, 2 App. C., sec. 567; Ezell v. Edwards, 2 App. C., sec. 769.

' The joinder of the maker and indorser does not preclude each party from setting up his own defense; and the court will render such judgment against each as the facts and the law of the case may require.

The court here settles it as a matter of practice, under the provisions of our statutes, that the drawer and indorser of a promissory note, bill of exchange, check, draft or other mercantile negotiable instrument, may and should be joined in the same action, if both be sued *simultaneously*.

And where separate actions are brought at different terms in the same court, the plaintiff may be required to consolidate, in order to save costs; unless in the opinion of the presiding judge manifest injustice will thereby be done to one or other of the defendants.

It is therefore considered here, that there is no sufficient error apparent upon the face of the record from the court below to reverse, but that the judgment of the said court should be affirmed.

*Affirmed.*

Judges Morris and Baylor say: "Upon the first point decided in this opinion we concur with our brother judges. On the second, we totally dissent; and are of opinion that the parties defendant were improperly joined, which would be sufficient cause for reversal."

## No. XXVIII.

### SIMMS AND SIMMS V. PRICE.

*Appeal from Red River County.*

MORRIS, JUSTICE.—James W. and Sam W. Simms allege indebtedness on the part of one Price to them, in an amount exceeding $100, for goods, wares and merchandise purchased and received by said Price from them, and also for money advanced for his (Price's) use and benefit. They allege that no part of this amount has been paid by them; but that a certain bank bill, which is appended to their petition, had been received by them from Price; which bill they now offer and had previously offered to return, averring the same to be counterfeit. Price, being duly served, appeared and filed his answer, denying the allegations in the petition. The cause was submitted to a jury, who rendered a verdict for the plaintiffs in the sum of $100, with interest; on which verdict a judgment was entered, and an appeal prayed by defendant.

---

**Note 60.**—Scott v. Maynard, p. 548.

[1] Act of January 18, 1840 (Gammel's Laws of Texas, vol. 2, p. 28), had no application to contracts made prior to its passage. Hodges v. Johnson, 15 T., 570. Before its passage, parol sales of land accompanied by possession were valid. Briscoe v. Bronaugh, 1 T., 326; Lynch v. Baxter, 4 T., 431; Monroe v. Searcy, 20 T., 348; Sullivan v. Dimmitt, 34 T., 114; Downs v. Porter, 54 T., 59; Barrett v. Spence (T. C. A.), U. R. C., 1902. Under decree of March 24, 1825 (Gammel's Laws of Texas, vol. 1, p. 125), and prior to decree of March 26, 1834 (Gammel's Laws of Texas, vol. 1, p. 357), sales of land and contracts to sell by colonists, before issuance of title, occupation and cultivation for six years, were void. After decree of March 26, 1834, and up to date of the Constitution of the Republic, they were void if made before issuance of title.

This cause is submitted to the court on the facts, a statement of which is embodied in the record. Without going into an examination of those facts, it is only necessary for us to say, that this court has repeatedly decided that they will not set aside the verdict of a jury unless the same be clearly and manifestly against the evidence adduced before them.

The testimony embodied in this record, although somewhat contradictory, still presents a case which it is peculiarly the province of the jury to investigate and determine, and we can see no reason to disturb their verdict. It is therefore considered by the court, that the judgment below be in all things affirmed.

*Affirmed.*

Judge Ochiltree says: "The weight of testimony presented to this court is strongly in favor of the fact that the bill sued for is genuine. With regard to the character of the witnesses we of course know nothing. If the witnesses were of equal character, the verdict of the jury was certainly against the weight of testimony. I therefore think that the judgment should have been reversed and the case remanded."

## No. XXIX.

### LEE MORRIS v. ASHLEY AND COLIN McKINNEY.

*Appeal from Bowie County.*

MORRIS, JUSTICE.—The plaintiff below, who is the appellant in this court, filed his bill, averring that in the year 1835 he came to the county of Red River, in the Republic of Texas; occupied, improved and cultivated a piece of land in that portion of said county known now as the county of Bowie; that he continued to occupy and cultivate or cause to be cultivated said land from that period until the year 1842, and that he is still in possession of the same; that he has obtained a certificate from the board of land commissioners, organized under the laws of this Republic, for one-third of a league of land as a single man, and that under the Constitution and laws of the Republic he is entitled to have the same located and surveyed, so as to include his said improvements; that he has agreed on conditional lines with certain individuals (naming them) as the boundaries of said survey. But that Colin and Ashley McKinney, combining together fraudulently to injure him, set up a claim to said land, by virtue of fraudulent surveys made on two certain fraudulent certificates, purporting to have been issued by one Benjamin R. Milam, under and by authority of the Mexican government, to the said McKinneys. That the said surveys cover all the land claimed by

Hunt v. Robinson, 1 T., 748; Robbins v. Robbins, 3 T., 496; Spillers v. Clapp, 3 T., 498; Desmuke v. Griffin, 10 T., 113; Emmons v. Oldham, 12 T., 18; Box v. Lawrence, 14 T., 545; Flanikin v. Fokes, 15 T., 180; Clay v. Cook, 16 T., 70; Soye v. McCallister, 18 T., 80; Atkinson v. Bell, 18 T., 474; Causici v. La Coste, 20 T., 269; Williams v. Chandler, 25 T., 4; Clay v. Clay, 26 T., 24; Ledyard v. Brown, 27 T., 393; Clay v. Clay, 35 T., 509; Jones v. Huff, 36 T., 678; Holmes v. Johns, 56 T., 41; Cook v. Lindsey, 57 T., 67; Grant v. Wallis, 60 T.,

petitioner, a conditional line having been agreed upon by the McKinneys, dividing the land in two parts; and that the said McKinneys are endeavoring to procure patents for the same from the Commissioner of the General Land Office. He therefore prays that they be made parties defendant to his bill; that an injunction issue restraining them from further proceedings; that they be required to set forth what right, title or claim they have to this land; and that the petitioner's right to a location and survey of the same be adjudicated and established.

On this petition an injunction was ordered by the judge below. The defendants were regularly summoned and appeared and answered by filing a general demurrer, with special causes assigned, and also an answer to the merits. The demurrer was sustained in the court below and judgment entered up, dissolving the injunction and dismissing the petition; from which judgment an appeal was taken to this court.

The grounds of demurrer are:

1. That the plaintiff has no cause of action whatever.

2. Multifariousness in the petition; in the joinder of two several causes of action, which should have formed the basis of separate and distinct actions at law.

3. Improper joinder of defendants; no joint interest having been alleged in them to the land claimed by plaintiff.

We will direct our attention to the two latter grounds of demurrer alone, they having been the only points relied on by counsel for a reversal or affirmance of the judgment below. And these two are so closely allied, that the decision of one almost by necessity involves that of the other. On the subject of multifariousness, we can only arrive at correct conclusions by applying the general principles, established by various authorities, to the particular case under consideration, and determining therefrom whether there is such a misjoinder in parties, either as to interest or person, as would warrant the court in sustaining an exception on that ground. In 2 Maddock, page 294, it is laid down, "that the courts will not permit a plaintiff to demand by one bill several matters of different natures against several defendants;" and the reason given for this rule is the plain and obvious one, that thereby costs might unjustly and onerously accumulate against a party by the delay incident to the adjudication of the rights of a codefendant with whom he was in no way interested.

In Comyn's Digest, 7, B. Chancery, page 2, the principle is expressed, that all interested in the "demand" ought 'to be parties in equity; and in examining the various expressions of various judges and authors on this subject, we might probably arrive at the general principle, as laid

350; Brown v. Simpson, 67 T., 225; Sideck v. Duran, 67 T., 256; Houston v. Killough, 80 T., 296; Baldwin v. Goldfrank, 9 T. C. A., 269; Clay v. Clay, 2 U. C., 357; Buchanan v. Park (T. C. A.), U. R. C., 1896. Sale was sufficient consideration for a new contract and could be ratified after removal of prohibition. Hunt v. Turner, 9 T., 385; Burleson v. Burleson, 11 T., 2; Atkinson v. Bell, 18 T., 474; Clay v. Clay, 35 T., 509; Jones v. Huff, 36 T., 678; Grant v. Wallis, 60 T., 350; Williams v. Wilson, 76 T., 69; Sewell v. Laurence, 2 U. C., 376. Colonists could alienate at expiration of six years. Desmuke v. Griffin,

down by Calvert on Parties, page 6, chapter 1, section 1, "that all interested in the object of the suit should be parties." In the case of the Mayor of York v. Pilkington a general right of fishing was established against many persons, unconnected and claiming several and distinct rights therein; on the principle, "that there was one common interest in all the parties defendant, centering in the point in issue." Apply these principles to the case under consideration. The "object" of the suit is to establish the plaintiff's right to an entire tract of land; parts of which "entirely" are claimed by defendants. The point in issue is the correctness of the *plaintiff's claim;* and a common interest, on the part of the defendants, center in that point. The decree of the court, establishing that right for the plaintiff, could be given without embarrassment or difficulty, and multiplicity of actions, which is abhorrent to the principles of equity, avoided. We can therefore have but little difficulty in arriving at the conclusion that the parties are properly joined, and that the judge below erred in sustaining the demurrer.

It is ordered, decreed and adjudged, that the judgment in the court below be annulled and reversed; that the demurrer be overruled and the cause remanded to proceed upon the merits.

*Reversed and remanded.*

## No. XXX.

### CLEMENT R. JOHNS v. THE REPUBLIC OF TEXAS.

#### (See Note 77.)

*Apeal from Red River County.*

HEMPHILL, CHIEF JUSTICE.—The appellant instituted suit to obtain a certificate for one-third of a league of land, which he claimed to be due to one James W. Herron, the original vendor of the headright. Judgment was given for the Republic and the following bill of exceptions was filed:

"In this case the presiding judge charge the jury, that before the plaintiff can recover it is incumbent on him to prove that the original claimant, Herron, was a resident citizen of Texas at the time the application for a land certificate was made before the board of land commissioners; to which the plaintiff excepts and prays that this exception form a part of the record."

We are of opinion that the judge of the court below in his charge to the jury did not err. The land law of 1837, in section 12, requires the purchaser of a headright to prove, among other matters, "that the person represented as entitled to a grant is actually a resident of the Republic at the time the application for the grant is made." In the cases of

---

10 T., 113; Clay v. Clay, 16 T., 70; Atkinson v. Bell, 18 T., 478; Clay v. Clay, 26 T., 24; Thomas v. Moore, 46 T., 433. Under decree of 1834, colonist could sell, subject to occupation and cultivation by his grantee. Emmons v. Oldham, 12 T., 18; Atkinson v. Bell, 18 T., 474; Johnston v. Smith, 21 T., 722; Clay v. Clay, 26 T., 24. And so could a grantee of a concession under decree

Board of Land Commissioners v. James Reily, Assignee, and of The Same v. Jesse Walling, we have decided that this provision of the statute was not in conflict with the Constitution. The question of discrepancy between the two instruments has not perhaps yet been argued with the elaborate effort or been subject to the thorough investigation which its importance and the magnitude of the interests involved would seem to require. The principles laid down in the cases above cited, not having been impugned in argument, will not be re-examined. They are decisive of the exception taken in this case. We are of opinion that there was no error in the charge of the judge, and it is therefore ordered, adjudged and decreed that the appeal be dismissed.

## No. XXXI.

### HARDIN v. TITUS.

#### (See Note 78.)

*Appeal from Red River County.*

OCHILTREE, JUSTICE.—This suit was brought for the recovery of a note, dated: "Hernando, Miss., Nov. 11, 1839.—On or before the first day of January, 1842, I promise to pay John L. Brown, seven hundred dollars, in the currency of this country, for value received of him. (Signed) John Hardin."

This note was assigned to the plaintiff by indorsement, in June, 1841.

The petition contains the usual allegations in a suit instituted by the indorsee of a promissory note against the maker, without any special averment respecting the currency in which the note purports to be made payable; and concludes with an allegation that the defendant has never paid the demand, and with a prayer for process and judgment against the defendant for the amount of the note with interest and costs.

The answer consists of a demurrer which avers that the plaintiff "has not set forth in his petition such a cause as entitles him to judgment;" also of a plea, "that on the day the note became due the defendant tendered to the plaintiff the full amount demanded by said note, which he refused to accept; and that the defendant is still ready to pay the plaintiff the same, to wit, the sum of seven hundred dollars in bank notes of the Bank of Mississippi."

The petition in this case contains, we think, all the necessary allega-

---

of 1825. Hancock v. McKinney, 7 T., 384; Jenkins v. Chambers, 9 T., 167; Murchison v. Hall, 10 T., 461; Ryan v. Jackson, 11 T., 391; Portis v. Hill, 14 T., 69; Marlin v. Stockbridge, 14 T., 165; Clay v. Holbert, 14 T., 189; Harris v. Hardeman, 15 T., 466; Fulton v. Duncan, 18 T., 34; Martin v. Parker, 26 T., 253; Manchaca v. Field, 62 T., 135. Under decree of January 4, 1823 (Gammel's Laws of Texas, vol. 1, p. 27), colonist could alienate at any time after receiving his grant. Portis v. Hill, 14 T., 69; Thomas v. Moore, 46 T., 433; Summers v. Davis, 49 T., 541. Title obtained under Act of December 14, 1837 (Gammel's Laws of Texas, vol. 1, p. 1404), were not affected by inhibition in colonization laws, prohibiting sale for six years. Babb v. Carroll, 21 T., 765, 769; Moore v. Bullard, 24 T., 149; Clay v. Clay, 35 T., 509; Jones v. Huff, 36 T., 678.

tions to sustain an action on a note of the description sued on. It would be different if the contract had been for the delivery of specific articles on *demand;* for then a demand, and refusal or failure, should be specially averred. But in cases where the contract specifies the *sum* to be discharged by the delivery of specific articles, or of a particular description of currency, and the time of payment, the place of delivery or payment either results from the nature of the contract itself, or is to be fixed by the creditor upon application of the debtor, before the time of delivery. In such cases it has been held that it is the duty of the payor to apply to the payee before the day of payment arrives, to ascertain where he will receive the articles specified; and it is the privilege of the latter to fix the place of delivery, provided it be a reasonable one, which the debtor will be bound to observe; or failing so to do, he will lose the benefit of discharging his contract *specifically,* and must be held to pay it in money. Bixley v. Whitney, 5 Greenl., 192. In cases, then, where the place of payment is fixed by the contract, or results from the nature of such contract, and in cases where the first step is to be taken by the debtor to ascertain the *place,* it is unnecessary for the plaintiff in describing his cause of action in his petition to allege anything concerning the place of payment, or his readiness there to receive the specific articles; and it will be sufficient if the petition set forth nonpayment generally. If the defendant relies on *specific* payment in his defense, he must set it forth with all the necessary incidents in his answer.

The plea is very defective. If the defendant intended to allege that on the day the note became due he tendered to the plaintiff the amount due in money, that is to say, gold and silver coin, he should have alleged his present readiness to pay in the same medium; otherwise the plea would be no defense. This he has not done, for upon a fair construction of this portion of the answer, the defendant alleges a tender in one description of currency, and his present readiness to pay in another, viz., bank notes of the Bank of Mississippi; and it does not appear by averment or otherwise that these "bank notes" are the currency referred to in the note. But in the absence of any statement of facts (and the transcript contains none in this case) it would be presumed, if the answer presented distinct and legitimate issues of fact, that these issues were properly tried in the court below, and determined in a manner compatible with its judgment.

In addition to the foregoing matters, the defendant has endeavored to establish an equitable defense, which he insists should preclude the plaintiff's recovery. This portion of the answer alleges that the note

---

[2] Nature, validity, obligation, construction and interpretation of contracts are determined by the lex loci contractus, unless a different place is fixed by the parties for performance. Hill v. McDermott, Dal., 419; Tinnen v. Mathews, Dal., 491; Huff v. Folger, Dal., 530; Gautier v. Franklin, 1 T., 732; Hays v. Cage, 2 T., 301; Snoddy v. Cage, 5 T., 106; Andrews v. Hoxie, 5 T., 171, 189; Campbell v. Wilson, 6 T., 379, 390; Raymond v. Holmes, 11 T., 54; Hall v. Harris, 11 T., 300, 305; McLeod v. Board, 30 T., 238; Cantu v. Bennett, 39 T., 303; Weider v. Maddox, 66 T., 372; Life Ass'n v. Harris, 94 T., 25; Apollos v. Staniforth, 3 T. C. A., 502; Merrielles v. State Bank, 5 T. C. A., 483; Tilliard v. Hall, 11 T. C. A., 381; M. K. & T. Ry. v. Thompson, 11 T.

sued on, together with several others, was given in purchase of two town lots in the town of Hernando, on the 11th of November, 1839, to one John L. Brown; that said Brown had purchased not only *these,* but *other* lots in said town, of the plaintiff and one Samuel McCorkle, and had received their bond to make a title when *all* the lots so purchased should be paid for; that the said McCorkle has informed him that the title to *his two lots* will not be made until Brown shall pay for *all* the lots he purchased; that Brown fraudulently concealed from the respondent the situation of the title to the lots purchased of plaintiff and McCorkle as aforesaid, and did not disclose the incumbrances affecting them; that consequently the respondent purchased in ignorance of these circumstances, and that he believes and charges that the said Brown is insolvent; that said Brown transferred the note sued on to the plaintiff; that it is the joint property of plaintiff and McCorkle who received it, knowing the circumstances under which it was given; also that he, the respondent, *took possession* of the *two* lots for which the note was given, believing that Brown would make him a good title, etc.

We do not deem it necessary to allude to the incumbrances complained of by Hardin. The latter part of his answer renders it entirely unnecessary to do so. To avail himself of the relief which he sought from the equitable power of this court, he should have shown that he had been evicted from those two lots, of which he took possession at the time of the purchase. 8 N. S., 330; 2 N. S., 619; 3 N. S., 611; 4 Mart., 23.

The defendant can not be permitted to withhold the price, unless he be evicted by one having paramount title. It would be alike unjust and contrary to the authorities cited to permit him to retain the property in possession without any actual or probable danger of being disseised or disturbed in the enjoyment of it, and at the same time refuse to pay the price. The judgment of the court below must be affirmed.

*Affirmed.*

## No. XXXII.

### JESSE CARR, BY DAVID A. MONAGHAN, GUARDIAN, v WILLIAM WELLBORN.

(See Note 79.)

*Appeal from Red River County.*

MORRIS, JUSTICE.—The plaintiff Monaghan, guardian of Carr, filed his bill in the district court on the 17th of February, 1843, and alleges the pendency of a suit in the chancery court for the sixth district of the

---

C. A., 658; M. P. Ry. v. Harris, 1 App. C., sec. 1265. By place of performance. Ryan v. M. K. & T. Ry., 65 T., 13; Seiders v. Life Ass'n., 93 T., 194; Life Ass'n. v. Harris, 94 T., 25; Good v. Caldwell, 11 T. C. A., 515; Applebaum v. Bates, 3 App. C., sec. 167. If to be partly performed in different States, intention of parties governs. Ryan v. M. K. & T. Ry., 65 T., 13. Seems that marriage contracts are an exception to general rule of lex loci contractus. Shreck v. Shreck, 32 T., 578. If subject of contract is land, the lex loci rei sitas governs. A mortgage executed without the State, contrary to its laws or public

northern chancery division of the State of Alabama, held in Huntsville on the third Monday after the fourth Monday in November, 1840, commenced by original bill some time in the year 1837, wherein the same parties as are now in this court were plaintiff and defendant. In which said bill it is substantially averred that Jesse Carr is and always has been a man of extremely weak and unsound mind, so as to be and always to have been incapable of managing his own affairs and especially incapable of making valid contracts. The bill sets forth the inquisition of lunacy taken before the proper tribunal in the State of Alabama and the action of that court adjudging said Carr to be non compos, or an idiot; the appointment of said Monaghan as the guardian both of his person and property; also, that about ten years before filing of said bill, Carr was possessed in his own right of certain negro slaves (naming them); that the said Wellborn, operating on the feeble mind of Carr, taking advantage of his extreme mental imbecility, by fraudulent means and contrivances induced him to convey the said slaves to said Wellborn under a fraudulent sale; that the said Wellborn has remained ever since in possession of said slaves, whose number has increased by births from the females. The petition prays that the sale be set aside as null and void and the negroes in controversy be decreed to Monaghan, as guardian of Carr. Upon this petition, after full answer by defendant and a tedious litigation of two years, a decree was rendered by the chancellor of said court in the State of Alabama, in November, 1840; wherein "it was ordered and adjudged that Jesse Carr recover of said Wellborn the sum of $967.90, with the slaves mentioned in his bill; and that all title of and to said slaves be divested out of Wellborn and vested in complainant Carr; the said slaves to be delivered to and held by his guardian, the said David A. Monaghan, for the use and benefit of said Carr." The whole record in this case is made a part of the plaintiff's petition in the court below; which goes on and alleges, that soon after the determination of said cause, or during its pendency, the defendant, Wellborn, secretly and fraudulently conveyed away the said slaves from the State of Alabama to the county of Red River, in this Republic, where he resides; and continues to hold them and their increase without title and in bad faith, and refuses to deliver them to the plaintiff in this action. To this petition the defendant filed a demurrer and also, under the rule of court, an answer to the merits. The demurrer was sustained by the court below and the plaintiff's bill dismissed with costs; from which judgment an appeal has been taken to this court.

---

policy, is void. Cantu v. Bennett, 39 T., 303; Fowler v. Bell, 90 T., 150. Contract valid under lex loci contractus is valid everywhere, unless in contravention of lex fori. If void under lex loci contractus, void everywhere. Andrews v. Hoxie, 5 T., 171, 189; Shelton v. Marshall, 16 T., 344; Ryan v. M. K. & T. Ry., 65 T., 13; Weider v. Maddox, 66 T., 372; Fowler v. Bell, 90 T., 150; Tuckett v. Herdic, 5 T. C. A., 690; T. & P. Ry. v. Davis, 2 App. C., sec. 191. If lex loci contractus is not alleged and proved, lex fori will be applied. Hill v. McDermott, Dal., 419; M. K. & T. Ry. v. Cocreham, 10 T. C. A., 166. Whether a writ is wrongfully sued out, is determined by the laws of the State where it was obtained. Wiley v. Traiwick, 14 T., 662.

The points raised by the demurrer are:

1. That a guardian, appointed in a foreign country, can not maintain a suit for his ward in our tribunals.

2. That by our laws, no suit founded on a judgment or decree of a foreign tribunal can be maintained in our courts, with certain exceptions; and that the judgment or decree which is the foundation of the plaintiff's action does not fall within those exceptions.

Upon the first point we must confess that much difficulty and embarrassment, under the peculiar circumstances of this case, have arisen in our minds. In examining the opinions of jurists on this subject, we find names eminent in the science of the law enrolled on opposite sides, and in support of their respective opinions, arguments so plausible in themselves and so well based on the foundations of reason and law and logic, that the mind rests suspended in doubt as to a correct conclusion. The civilians almost without exception agree in the conclusion that the authority of the guardian over the person and personal, or movable property of his ward extends to foreign countries, and that he is entitled to assert his claims over the movable property of the ward and sue for his debts in a foreign country, without having any confirmation of his guardianship by the local authorities; whilst some have gone to the extent of permitting and recognizing the same right over the immovable property. In the English courts, at least one case can be found where the first proposition has been sustained; although the current of modern cases in their courts seems to have fallen into what now is the fixed channel of the large mass of American decisions, "that the rights and powers of guardians are strictly local, and not entitling them to exercise any authority over the person or personal property of their wards in other States, upon the same reason and policy that has circumscribed the rights and authorities of foreign executors and administrators, who are not permitted to sue or be sued in their official capacity in any country, foreign to that from whence they derive authority; but to maintain any suit, new letters of administration must be obtained in accordance with the laws of that country in whose tribunals they may wish to institute an action." The authorities on this subject are now so numerous that they scarcely need a reference to them; although upon examination it will be found that the general rule has had its exceptions and distinctions which have been supported by reasons the most cogent and forcible. In 8 Louisiana, in the case of Chiapella v. Comprey et al., it has been decided, "that a tutor, or guardian regularly appointed in another State, or foreign county, has authority to sue for,

---

**Note 61.**—Simms v. Price, p. 554.

Purpose of charge is to give jury the means of applying the law to the facts. Reynolds v. Williams, 1 T., 311; Henry v. Sansom, 2 T. C. A., 150. Charge should state matters of law, not questions of fact. Reynolds v. Williams, 1 T., 311; Gay v. McGuffin, 9 T., 501; Jones v. State, 13 T., 168; Insurance Co. v. Brown, 82 T., 631; Searcy v. State, 1 T. App., 440; Rice v. State, 3 T. App., 451. Should distinctly separate questions of law from questions of fact. Rogers v. Broadnax, 24 T., 538; Brucham v. Gann, 1 U. C., 345; Hammond v. Coursey, 2 U. C., 29. Questions of fact only should be submitted

recover, receive or take possession of property situated in that State, belonging to the inheritance of his ward, without confirmation by any of the tribunals of that State." The court in that instance say, "that though their decisions, with regard to foreign testamentary executors having no right to sue except after confirmation by their courts, might well be questioned, still, being settled by previous adjudication, they will not now inquire into it." And in conclusion the reason is given in general terms, "as arising from the distinction between the rights and duties of tutors and guardians and executors. The office of the latter is of short duration and confined solely to the property of the estate; whilst the former have the guardianship and protection of minors committed to their charge, and are bound to provide for their maintenance for a length of time. They would be unable to perform their duties if the possession of the estate which they have a right to administer be withheld from them."

In the case of Holmes et al. v. Rensen et al., Executors of Clason, cited in 4 Johns. Chan. Rep., 460, it was held, "that the assignees of a foreign bankrupt might sue in that State (New York) for debts due to the bankrupt's estate, either as such assignees or in the name of the bankrupt." Although this case may not be precisely in point, still in many of its bearings and much of the reasoning of the learned judge it will be found parallel in principle with the case at bar. The general grounds of international law, public polity, and general comity between nations, which form the basis of the conclusions at which he arrives, are alike applicable to this case, and prove at least that the broad rule laid down with regard to persons deriving their authority by local law being confined strictly within the limits of the jurisdiction from whence they derive their authority, not only admits of exception, but also of extension, when reason and justice require it. Organized as our system is on the principles of the common law, both reason and prudence should lead to adopt decisions of courts whose system is the same; especially when supported by the authority of reason and the dignity of names, eminent for their proficiency in science and wisdom and their elucidation of the principles of the common law. Much less would we attempt, in the infancy of our jurisprudence, to decide between the conflicting opinions of civil and common law jurists on so difficult a question. "Non nostrum tantas componere lites." Enough that we should follow in the beaten track, guided by the lights which they have shed, to conclusions correct in principle, guarded by precedent, and just in their effects. Admitting, then, that the decision of judges of the common law courts on this subject be correct, and that we adopt them as our

---

to jury. Railway v. Murphy, 46 T., 356. Jury must look alone to charge of court for the law, and to evidence for facts. Green v. Hill, 4 T., 465; Railroad v. Nixon, 52 T., 19; Goode v. State, 16 T. App., 411. If jury finds contrary to instructions, verdict should be set aside. Reynolds v. Williams, 1 T., 311; Railway v. Mackney, 83 T., 410; Marsalis v. Patton, 83 T., 521; Goggan v. Evans, 12 T. C. A., 253; Wilkinson v. Wallis, 1 App. C., sec. 688. Error for court to direct jury for which party to find. Reynolds v. Williams, 1 T., 311; San Antonio v. Lane, 32 T., 405; Williams v. Davidson, 43 T., 1.

own, we have seen that even with them there are exceptions and distinctions, by *implication*. Are there none in express terms?

In section 516, page 432, Story's Conflict of Laws, we are called on to note a distinction which is rather in the nature of an exception to the general rule which has been before stated. He says: "If a foreign administrator has in virtue of his administration reduced the personal property of the deceased there situated into possession, so that he has acquired the legal title thereto according to the laws of that country, if that property should be afterwards found in another country or be carried away and converted there against his will, he may maintain a suit there, *in his own name and right,* personally, without taking out new letters of administration; for he is to all intents and purposes the legal owner thereof, although he is so in the character of trustee for other persons; and so with regard to specific legacies," etc. I might stop at this point, as being conclusive on the question before us for consideration, but for the fact that the words of the learned author might lead to the conclusion that a reduction of the property into "absolute and positive possession" was necessary before the right of the administrator would be recognized. Let us see if such be his meaning, or such the conclusion to which *reason and law* should lead us!

The judgment or decree on which the present action is founded wa', in the alternative, for the specific property claimed in the bill; or, if that could not be reached, for its *value.* It was in its terms and from its very nature a judgment in rem; and such judgments upon principles of comity, international law, and reason are final and conclusive everywhere. Story's Con. of Laws, p. 495, secs. 591, 592. Even were this a judgment in personam, which has been held in some courts both of the United States and England to be only prima facie evidence of that which it purports to adjudge or decide, still, under the form and in the manner in which this case is presented to our consideration, it could not be attacked. The extreme limit to which any of the courts above mentioned have gone in examining the judgments of foreign tribunals in *fact,* although from the general expressions used in their decisions *an implication to a greater extent could be drawn,* is, "that it must be shown that such foreign tribunal has jurisdiction over the subject matter and the person; that due notice had been given to the parties; or that it was procured by fraud, founded in mistake, or irregular and bad by the local law, rei judicatae." Story's Con. of Laws, p. 507.

The judgment or decree which is the basis of this action, together

---

**Note 62.**—Darly v. Chevalier, p. 555.

¹ Errors not objected to in trial court can not be raised on appeal. Edwards v. Peoples, Dal., 359; Mann v. Thruston, Dal., 370; Bailey v. Hardy, Dal., 376; Wescott v. Menard, Dal., 503; Hansborough v. Towns, 1 T., 58; Crosby v. Houston, 1 T., 203; Burton v. Anderson, 1 T., 93; O'Conner v. Towns, 1 T., 107; Jones v. Black, 1 T., 527; Cloud v. Smith, 1 T., 611; Swenson v. Walker, 3 T., 93, 110; Hopkins v. Donaho, 4 T., 336; Coles v. Perry, 7 T., 109; Davenport v. Lackie, 8 T., 351; Pierson v. Burney, 15 T., 272; Shelby v. Burtis, 18 T., 644; Bullock v. Hayter, 24 T., 9; Robinson v. Mattison, 25 T. Supp., 451; Elliot v. Mitchell, 28 T., 105; Allen v. Traylor, 31 T., 124; An-

with the record of the cause in the court wherein it was decided, having been made a part of the petition, the demurrer of the defendant, by admitting its correctness, would prevent the possibility of those questions arising now; and so far as the present position of the case is concerned, the judgment would be and is deemed conclusive as to the rights of the parties, whether it be in rem or in personam, unless some of the causes above enumerated were shown to exist upon the face of the decree, which has not been attempted to be done. That judgment divests the property in the negroes out of Wellborn and vests it in Carr (the idiot), and vests likewise the legal title and possession in Monaghan, as trustee for Carr. Monaghan had before that time, by his appointment from the proper court as guardian for Carr, been clothed with all the rights of his ward, in possession or in action. This was a right in "action," which when established in a competent tribunal, became merged in the judgment and vested as an absolute right in him personally.

Thus when a judgment is obtained by an administrator against a debtor, in the court to whose jurisdiction he is accredited, it will give the right to such administrator to maintain a personal suit against the debtor in any other State; because the judgment would *as to him* merge the original debt and make *it personally due to him, in his own right;* he being responsible therefor to the estate. Story's Con. of Laws, 522, p. 437. If this be correct law as to debts, it is equally applicable to "specific recovery of specific property;" and the right of an administrator to such recovery, when established by a competent tribunal, would merge the former inchoate right and give it personally to *him;* in which event he might maintain a suit in his own name in a foreign tribunal. With the strict rules, as applicable to *administrators,* we find that the *right would exist;* a fortiori then should it more readily be extended to guardians, whose rights and privileges, as well as those of their wards, are the special objects of the care and protection of the courts of all countries. The guardian in the case before us has prosecuted his inchoate right in a competent tribunal, having jurisdiction over the person and subject matter in controversy; he has obtained his decree, which merges the former right and vests it *personally in him;* and he therefore falls clearly within the distinction and is entitled to maintain his action.

The second ground of demurrer is urged under the second section of an act of our Congress, entitled "An act creating a system of bankruptcy and regulating the collection of foreign debts." Texas Laws, vol 5, p. 44. The section reads in the following words:

"That no suit, proceeding, judgment or decree shall be brought, pros-

drews v. Jones, 36 T., 149; Hughes v. Roper, 42 T., 116; Carter v. Eames, 44 T., 544; Johnson v. Blunt, 48 T., 38; Ragsdale v. Robinson, 48 T., 379; Life Ins. Co. v. Ray, 50 T., 511; Urquhart v. Womack, 53 T., 616; Brooke v. Clark, 57 T., 105; Caruth v. Grigsby, 57 T., 259; Farley v. Deslonde, 58 T., 588; Long v. Garnett, 59 T., 229; Langton v. Marshall, 59 T., 269; Flanagan v. Pearson, 61 T., 302; Gaines v. Nat. Exchange Bank, 64 T., 18; Ford v. Cowen, 64 T., 129; Blum v. Golden, 66 T., 621; Cannon v. Cannon, 66 T., 682; Tevis v. French, 71 T., 59; Ellis v. Garvey, 76 T., 371; Shornick v. Bennett, 77 T., 244;

ecuted or sustained in any court or judicial magistracy of this Republic, on any judgment or decree of any court or tribunal of any foreign nation, State or territory; this Republic not being bound by any international law or comity to give credence or validity to the adjudication of foreign tribunals whose measures of justice and rules of decision are variant and unknown here; but this provision is *in 'no degree'* to affect the validity or obligation of contracts, engagements or pecuniary liabilities originating abroad, or the original evidence, testimony or proof to establish the same; neither shall this provision extend to, or embrace any foreign judgment or decree, for specific property or *recovery,* introduced as the basis of a public sale for the transmission of title, or the record or memorial of any *link* or *muniment* of title to specific estate, all of which shall depend upon the present law and usages of the Republic; and this provision shall not in any manner relate to or affect the determination of courts of admiralty and maritime jurisdiction abroad, proceeding in rem and according to the laws of nations."

The judgment or decree on which this action is founded is, under the demurrer, to be deemed conclusive between the parties, as we have before stated. That judgment divests the property out of appellee in this court, who was the defendant below, and vests it in the appellant. It is for "specific estate" and forms of itself the *muniment* of the appellant's title, coming, both in terms and spirit, within the letter and intent of the statute. It is the "record or memorial of a muniment of title" of the same nature but higher dignity than a *deed.* That portion of the judgment which relates to moneyed transactions between the parties and decrees a recovery to the plaintiff of a certain amount of money, must fail under the statute; but as to the *specific estate and recovery,* it is well brought and must be sustained.

Both grounds of demurrer, then, being untenable, we think that the court below erred in sustaining it. It is therefore ordered and adjudged that the judgment of the court below be reversed, the demurrer overruled, and the cause remanded to proceed upon the bill and answer.

*Reversed and remanded.*

Brown v. Perez, 79 T., 157; Cason v. Conner, 83 T., 26; Hanrick v. Curley, 93 T., 458; Lytle v. Custead, 4 T. C. A., 490; Baker v. Collins, 4 T. C. A., 520; Spencer v. James, 10 T. C. A., 327; Eastham v. Sims, 11 T. C. A., 133; Prestage v. Loving, 1 App. C., sec. 707; Adams v. Duggan, 1 App. C., sec. 1268; Sears v. Green, 1 U. C., 734.

[2] In order to maintain action against executor or administrator, claim must be duly authenticated, presented and rejected. Graham v. Vining, 1 T., 639; Tompkins v. Bennett, 3 T., 36, 49; Harrison v. Knight, 7 T., 47; Hall v. McCormick, 7 T., 269; Millican v. Millican, 15 T., 460; Thompson v. Branch, 35 T., 21; Bank v. Higgins, 72 T., 66; Jenkins v. Cain, 72 T., 88; Kiolbassa v. Raley, 1 T. C. A., 165; Perkins v. Traynham, 3 App. C., sec. 78; Ballard v. Murphy, 4 App. C., sec. 171; Lainer v. Taylor (T. C. A.), U. R. C., 1897. Presentation and rejection after suit is filed, is not sufficient. Thompson v. Branch, 35 T., 21. And authentication, presentation, rejection and date of same should be specifically alleged and proved. Cummings v. Jones, Dal., 531; Graham v. Vining, 1 T., 639; Graham v. Vining, 1 T., 669; Hall v. McCormick, 7 T., 269, 278; Deen v. Duffield, 8 T., 235; Fulton v. Black, 21 T., 424; Wiley v. Pinson, 23 T., 486; Walters v. Prestidge, 30 T., 65; Swift v. Trotti, 52 T., 498; Tolbert v. McBride, 75 T., 95; Rogers v. Harrison, 1 App. C., sec. 495. Indorsement on claim rejecting it, is prima facie proof of rejection, in

## No. XXXIII.

### NASH AND MABBIT V. THE REPUBLIC.

#### (See Note 80.)

*Appeal from San Augustine County.*

HEMPHILL, CHIEF JUSTICE.—In this case the defendants, being guilty of an affray, were ordered by the court to pay fines respectively and to remain in custody until payment was made. After the entry of the judgment, motions were made by the defendants separately for the arrest thereof; and on considerations of the motions, judgment against Nash was arrested; but the court, regarding the grounds set forth in the motion made by the defendant Mabbit as novel and difficult, made no decision thereon, but reserved them for the discretion and consideration of the Supreme Court. Were it competent for this tribunal to entertain jurisdiction of the points of law involved in this case, we might discuss the propriety or legality of entertaining a motion in arrest of judgment after it has once been rendered by the court; but the questions reserved for our deliberation not having been decided below, we are without jurisdiction and can not properly consider any of the matters embraced in the record.

The Constitution having declared that the jurisdiction of the Supreme Court shall be appellate only, we are limited to the review of the adjudications of inferior courts; and until their decisions are made, no subject matter arises on which the revisory power of this court can be exerted. See the case of McLaughlin v. The Republic, 1841. It is therefore ordered that the case be dismissed for want of jurisdiction.

*Dismissed.*

## No. XXXIV.

### JAMES L. SMITH V. WILLIAM JAMISON.

*Appeal from Harrison County.*

JACK, JUSTICE.—Jamison sued Smith in the district court upon five several notes and obtained judgment. Smith appealed. One of the notes was made payable, "to Sewell and Long, or bearer." The petition contains an averment that this note, "for a valuable consideration, was transferred by delivery" to the plaintiff below.

The statement of facts sets out: "That one of the notes sued on was made payable to Sewell and Long, or bearer,—a firm in the town of

---

absence of plea of non est factum. Tolbert v. McBride, 75 T., 95. These rules are as applicable to claims secured by liens as to unsecured claims. Graham v. Vining, 1 T., 639; Graham v. Vining, 2 T., 433; Danzey v. Swinney, 7 T., 617; Conkrite v. Hart, 10 T., 140, 141; Crosby v. McWillie, 11 T., 94; Duty v. Graham, 12 T., 427, 437; Robertson v. Paul, 16 T., 472, 475; Cunningham v. Taylor, 20 T., 126; Converse v. Sorley, 39 T., 515; Buchanan v. Wagnon, 62

Shreveport, Louisiana,—as attorneys at law, and judgment was rendered for plaintiff, without proving the existence of the partnership."

Upon this statement of facts the case is submitted in this court without argument.

We know of no rule of evidence which requires the proof to be made, by the holder of a note indorsed or transferred to him, of the partnership of the original payees of such note. And even if such were the law, the defendant in this case below in one of his answers has expressly admitted the fact, by averring that the note was "made payable to James B. Long and William Sewell, partners."

We are of the opinion that the appeal was for delay, and that the judgment of the district court should be affirmed with 10 per cent damages.

*Affirmed.*

## No. XXXV.

### MITCHELL v. BARTON.

OCHILTREE, JUSTICE.—This case has been brought here by the appellee, who demands an affirmance of the judgment of the court below. The tenth rule for the government of the Supreme Court prescribes the manner in which transcripts shall be prepared for the inspection of this court.

The transcript in this case is so entirely slovenly, so wanting in every essential requisite under the rule to which we have referred, that we decline taking any further action thereon.

---

T., 375; Wilson v. Harris, 91 T., 427. It is not necessary to verify and present claim to independent executor before bringing suit. Pleasants v. Davidson, 34 T., 459; Black v. Rockmore, 50 T., 88, 99; Smyth v. Caswell, 65 T., 379; Ellis v. Mabry, 25 T. C. A., 164. If executor allows claim and rejects lien, suit can not be maintained to foreclose lien. Mortgage Co. v. Jackman, 77 T., 622; George v. Ryon, 94 T., 317; Moore v. Glass, 6 T. C. A., 368. In such cases the lien must be enforced through probate court and not by an independent action in another court, except where claimant has some legal or equitable right connected with claim, which can not be adjudicated in probate court. Cunningham v. Taylor, 20 T., 126; Cannon v. McDaniel, 46 T., 303; George v. Ryon, 94 T., 317; Moore v. Glass, 6 T. C. A., 368; Perkins v. Traynham, 3 App. C., sec. 78. When both claim and lien on land are rejected, only remedy is in district court. Leslie v. Elliott, 26 T. C. A., 578. Presentation to and rejection by one of several executors is sufficient to authorize suit. Deen v. Duffield, 8 T., 235. Failure to present claim within one year from appointment of administrator does not defeat action to foreclose lien. Phillips v. Mortgage Co., 90 T., 195. When a lien claim is rejected, claimant may have judgment in district court for establishment of lien as well as debt. Cunningham v. Taylor, 20 T., 126; Perkins v. Sterne, 23 T., 561; George v. Ryon, 94 T., 317 (reversing George v. Ryon, T. C. A., U. R. C., 1900); Jenkins v. Cain (T. Sup.), U. R. C., 1889. Presenting claim without presenting lien is sufficient presentation, though the better practice is to present both. Danzey v. Swinney, 7 T., 617; Cundiff v. Simpson, 32 T., 144; Cannon v. McDaniel, 46 T., 303; Mortgage Co. v. Jackman, 77 T., 622. Presenting claim alone is not waiver of lien. Ball v. Hill, 48 T., 634; Kempner v. Comer, 73 T., 196; Sutherland v. Elmendorf, 24 T. C. A., 137. In a contest between lien creditors, appellant can not on appeal object for first time that appellee's claim was not duly authenticated and presented, where administrator is not party to ap-

peal. Watt v. White, 46 T., 338. Holder of vendor's lien note is not required to present claim to administrator of deceased indorser before bringing suit against maker to foreclose lien. Watt v. White, 46 T., 338.

**Note 63.**—Ward v. Boon, p. 561.

Action of court in granting or refusing continuances will not be revised unless it is plain that injustice has been done. Hart v. King, Dal., 456; Hipp v. Bissell, 3 T., 18; Hipp v. Huchett, 4 T., 20; Ayers v. Duprey, 27 T., 593; Peck v. Moody, 33 T., 84; Addington v. Bryson, 1 App. C., sec. 1292; Texas Express Co. v. Scott, 2 App. C., sec. 72. Where the allowance or refusal of the continuance is within the discretion of the court a very clear case of abuse of discretion must be shown to authorize a reversal. Lewis v. Williams, 15 T., 47; Byne v. Jackson, 25 T., 95; Baldessore v. Stephanes, 27 T., 455; McMahan v. Busby, 29 T., 191; Wiggins v. Fleishel, 50 T., 57; Allyn v. Willis, 65 T., 65; M. P. Ry. Co. v. Christman, 65 T., 369; Guy v. Metcalf, 83 T., 37; T. & P. Ry. Co. v. Hall, 83 T., 675; Hannah v. Chadwick, 2 App. C., sec. 518.

**Note 64.**—Robertson v. McMillan, p. 564.

A verdict is sufficiently certain which can be rendered certain by reference to the record. Burton v. Anderson, 1 T., 93; Burton v. Bondies, 2 T., 203; James v. Wilson, 7 T., 230; Wells v. Barnett, 7 T., 584; Norton v. Reynolds, 8 T., 284; Smith v. Johnson, 8 T., 418; Parker v. Leman, 10 T., 116; Avery v. Avery, 12 T., 54; Moke v. Fellman, 17 T., 367; Kolb v. Bankhead, 18 T., 220; Pearce v. Bell, 21 T., 688; Loggins v. Buck, 33 T., 113; Newcomb v. Walton, 41 T., 318; Griffin v. Chadwick, 44 T., 406; Irvin v. Garner, 50 T., 48; G. C. & S. F. Ry. Co. v. James, 73 T., 12; M. P. Ry. Co. v. White, 76 T., 102; Martin-Brown Co. v. Perrill, 77 T., 199; Buchanan v. Townsend, 80 T., 534; Dodd v. Gaines, 82 T., 429; Kinkler v. Junica, 84 T., 116; G. C. & S. F. Ry. Co. v. Fink, 4 T. C. A., 269; Merrielles v. Bank, 5 T. C. A., 483; Evans Co. v. Reeves, 6 T. C. A., 254; Alamo Fire Ins. Co. v. Lancaster, 7 T. C. A., 677; Holden v. Meyer, 1 App. C., sec. 832; Munn v. Martin, 4 App. C., sec. 61.

**Note 65.**—Holdeman v. Knight, p. 566.

The rule against multiplicity of suits has special favor in our system of procedure, and a party who can enforce his right in one suit, will not be permitted to resort to many. Chevalier v. Rusk, Dal., 611; Binge v. Smith, Dal., 616; Pitts v. Ennis, 1 T., 604; Smith v. Power, 2 T., 57; Francis v. Northcote, 6 T., 185, 188; Moore v. Minerva, 17 T., 20, 23; Clegg v. Varnell, 18 T., 294; Blair v. Gay, 33 T., 157; Lyles v. Murphy, 38 T., 75; Bond v. Dillard, 50 T., 302; Goldman v. Blum, 58 T., 630; Rush v. Bishop, 60 T., 177; G. H. & S. A. Ry. Co. v. Dowe, 70 T., 5; Moody v. Smoot, 78 T., 119; Middlebrook v. Bradley, 86 T., 706; Mathonican v. Scott, 87 T., 396; Mathis v. Pridham, 1 T. C. A., 58; St. L. S. W. Ry. v. Moss, 9 T. C. A., 6; Mateer v. Cockrill, 18 T. C. A., 391; S. A. & A. P. Ry. v. Griffin, 20 T. C. A., 91; Wilson v. P. & N. Ry., 23 T. C. A., 706; Cox v. Lloyd, 1 App. C., sec. 123; Vogelsang v. Mensing, 1 App. C., sec. 1165; H. & T. C. Ry. v. Stewart, 1 App. C., sec. 1246; I. & G. N. Ry. v. Donalson, 2 App. C., sec. 238. A second suit may be maintained upon a judgment when a second judgment will be more advantageous than the first Stephens v. Stone, 94 T., 415.

**Note 66.**—Smith v. Townsend, p. 569.

As a general rule copies of notarial acts are admissible in evidence. Houston v. Perry, 5 T., 462; Herndon v. Casiano, 7 T., 322; Titus v. Kimbro, 8 T., 210; Hubert v. Bartlett, 9 T., 97; Beaty v. Whitaker, 23 T., 526; Andrews v. Marshall, 26 T., 212; Hooper v. Hall, 35 T., 82; Storey v. Flanagan, 57 T., 649; Smith v. Gillum, 80 T., 120; Frost v. Wolf, 77 T., 455; Trinity County Lumber Co. v. Pinckard, 4 T. C. A., 671. Is not admissible without proof of due execution by notary. McCarty v. Johnson, 20 T. C. A., 184.

**Note 67.**—Harlan v. Baker, p. 578.

If instructions given by the court are defective in omission special charges should be requested. Converse v. McKee, 14 T., 20; Robinson v. Varnell, 16 T., 382; Cole v. Cole, 17 T., 4; Linn v. Wright, 18 T., 317; Bast v. Alford, 20 T., 226; Fowler v. Waller, 25 T., 695; Powell v. Haley, 28 T., 56; Simonton v. Forrester, 35 T., 584; Robinson v. Davenport, 40 T., 333; Johnson v. Granger, 51 T., 42; Hawkins v. Cramer, 63 T., 99; Hays v. Hays, 66 T., 606; T. & N. O. Ry. v. Crowder, 70 T., 222; Currie v. Gunter, 77 T., 490; Mayer v. Walker, 82 T., 222.

**Note 68.**—Republic v. Skidmore, p. 581.

Under Act of December 14, 1837 (Gammel's Laws of Texas, vol. 1, p. 1404), it was necessary to prove in court the same facts which the statute

required for the satisfaction of the Board of Land Commissioners. Land Commissioners v. Reily, Dal., 381; Johns v. Republic, Dal., 621; Land Commissioners v. Raguet, 2 T., 98. Claimants were required, prior to Act of February 2, 1848 (Gammel's Laws of Texas, vol. 3, p. 18), to prove same facts under section 11 of Act of February 4, 1841 (Gammel's Laws of Texas, vol. 2, p. 635). Tichner v. State, 2 T., 269; State v. Mason, 2 T., 315; Linn v. State, 2 T., 317. Acts of December 14, 1837, and February 4, 1841, required applicant to prove that he did not refuse to participate in the war and that he did not assist the enemy; and if applicant's intention of remaining while in the Republic, and certainly of returning on departure, were equivocal, he was not entitled to establish claims for donations of land. State v. De Casinova, 1 T., 401; Thomerson v. State, 8 T., 172; Russell v. Randolph, 11 T., 460; Patton v. Evans, 15 T., 363. But temporary absence did not forfeit claim. Republic v. Young, Dal., 464. Applicant to establish headright claim under Acts of December 14, 1837, and February 4, 1841, was required to prove both actual residence at date of declaration of independence and continued residence to time of making application to establish claim. Land Commissioners v. Walling, Dal., 524; Jones v. Republic, Dal., 621; State v. De Casinova, 1 T., 401; Grooms v. State, 1 T., 568; Republic v. Skidmore, 2 T., 261; Tichner v. State, 2 T., 269; Land Commissioners v. Wiley, 3 T., 237; Paschal v. Perez, 7 T., 348; Jones v. Montes, 15 T., 351. Titles issued by alcaldes and commissioners after closing of Land Office by Act of Consultation on November 13, 1835 (Gammel's Laws of Texas, vol. 1, p. 541), which took effect immediately on adoption, are null and void. Donaldson v. Dodd, 12 T., 381; Spier v. Laman, 27 T., 205; Parker v. Baines, 59 T., 15. If the title was actually issued before November 13, 1835, making out and delivering the testimonio shortly afterwards did not invalidate the title. Houston v. Blythe, 60 T., 506. Holders of orders for surveys and headright certificates, issued prior to November 13, 1835, could only establish their claims in the mode prescribed by Act of December 14, 1837 (Gammel's Laws of Texas, vol. 1, p. 1404), upon proof of facts enumerated in section 12. Land Commissioners v. Reily, Dal., 381; Land Commissioners v. Walling, Dal., 524; Republic v. Inglish, Dal., 608; Johns v. Republic, Dal., 621; Jones v. Menard, 1 T., 771; Trimble v. Smithers, 1 T., 790; Land Commissioners v. Raguet, 2 T., 98; Land Commissioners v. Riley, 3 T., 237; Capp v. Terry, 75 T., 391. All certificates returned by commissioners as genuine, but not recommended on account of want of oath required by section 12 of Act of December 14, 1837, were validated and directed to be patented by Act of January 19, 1841 (Gammel's Laws of Texas, vol. 2, p. 528). Whitehead v. Foley, 28 T., 1; Spofford v. Bennett, 55 T., 293. Under Act of February 5, 1840 (Gammel's Laws of Texas, vol. 2, p. 335), patents could only issue on certificates of recommendation from Board of Land Commissioners and holders of unrecommended land certificates had no standing in court without it. Norton v. Land Commissioner, 2 T., 357; Bracken v. Wells, 3 T., 88, 90; Kemper v. Victoria, 3 T., 135; Miller v. Brownson, 50 T., 583. All surveys supported by recommended certificates valid; without them, invalid. Warren v. Shuman, 5 T., 441; Scott v. Mather, 14 T., 235; Whitehead v. Foley, 28 T., 268. Headright certificate is not color of title, unless recommended. Horton v. Crawford, 10 T., 382; Whitehead v. Foley, 28 T., 268. Prohibition in Act of February 5, 1840, against surveys on unrecommended certificates after May 1, 1840, did not legalize surveys made either prior or subsequently on unrecommended certificates. Warren v. Shuman, 5 T., 441. It seems that surveys on genuine headright certificates are valid, though not recommended by commissioners. Howard v. Perry, 7 T., 259; Hart v. Gibbons, 14 T., 213. But under Act of January 29, 1840 (Gammel's Laws of Texas, vol. 2, p. 313), authority to issue patents on first class headright certificates, was based on recommendation. Miller v. Brownson, 50 T., 583. Under extension of time allowed by Constitution of 1845, a survey made on an unrecommended certificate prior to January 1, 1844, suit to establish claim could be maintained in 1847. Lewis v. Mixon, 11 T., 564; Hart v. Gibbons, 14 T., 213; Scott v. Mather, 14 T., 235. Under Act of February 7, 1860 (Gammel's Laws of Texas, vol. 4, p. 1410), providing for re-examination of rejected warrants and certificates, a rejection made before limit of time fixed in section 11 is not void, the object of the statute being to give claimants ample time to prove their claims. Durrett v. Land Commissioner, 28 T., 687. Under Act of April 25, 1871 (Gammel's Laws of Texas, vol. 6, p. 962), holders of unlocated certificates were not required to locate them at any particular period between passage of law and January 1, 1875. Laws in force prior to Act of November 29, 1871 (Gammel's Laws of Texas, vol. 7, p. 47), did not require certificate and field notes to be returned within twelve months after survey. Snider v. I. & G. N. Ry., 52 T., 306; Snider v. Methvin, 60 T., 487. Under Rev. Stats., 1895, arts. 4138 and 4145, survey must be made within twelve months after entry, and field notes returned within twelve months after survey. Von Rosenberg v. Cuellar, 80 T., 249. A colonist was not en-

titled to a grant as head of a family, unless his family was resident in Texas. Land Commissioners v. Bell, Dal., 366; Land Commissioners v. Reily, Dal., 381; Land Commissioners v. Walling, Dal., 524; Langford v. Republic, Dal., 588; Republic v. Inglish, Dal., 608; Johns v. Republic, Dal., 621; Grooms v. State, 1 T., 568; Republic v. Skidmore, 2 T., 261; Tichnor v. State, 2 T., 269; Lewis v. Ames, 44 T., 319, 345; Lott v. King, 79 T., 292; Hill v. Moore, 85 T., 335; Byrn v. Kleas, 15 T. C. A., 205; Union Beef Co. v. Thurman, 70 Fed. Rep., 965. An unmarried colonist, under twenty-one years of age, was not entitled to a headright grant. Lockhart v. Republic, 2 T., 127. But it will be presumed from the fact that a headright certificate was granted by the proper authority, that the grantee was the head of a family, and evidence is not admissible in a collateral proceeding to show that he was not married and that his family was not in Texas. Johnston v. Smith, 21 T., 722; Bowmer v. Hicks, 22 T., 155; Howard v. Colquhoun, 28 T., 134; Burkett v. Scarborough, 59 T., 495; Capp v. Terry, 75 T., 391; Boone v. Hulsey, 71 T., 176; Hill v. Moore, 85 T., 335; Byers v. Wallace, 87 T., 503. Grant is valid, if the grantee in good faith intended to move his family to Texas. Republic v. Young, Dal., 464; State v. Skidmore, 5 T., 469; Russell v. Randolph, 11 T., 460. Removal and intention to remain for an indefinite time changes domicile, though there may be a floating intention to return at some future time. State v. De Casinova, 1 T., 401; State v. Skidmore, 5 T., 469.

**Note 69.**—Hamilton v. Black, p. 586.

A general demurrer admits all facts well plead to be true. Carr v. **Well-born**, Dal., 624; Lambeth v. Turner, 1 T., 364; Zacharie v. Bryan, 2 T., **274;** Jouett v. Jouett, 3 T., 150; Catlin v. Glover, 4 T., 151; Chambers v. **Miller,** 9 T., 236; Earle v. Earle, 9 T., 630, 634; Holman v. Griswell, 13 T., 38; Roy v. Bremond, 22 T., 626, 632; Williams v. Warnell, 28 T., 610; George v. Vaughan, 55 T., 129; Junction City School Incorporation v. Trustees, 61 T., 148, 152; Lyle v. Harris, 1 App. C., sec. 71. It does not admit a conclusion of law alleged by the pleader. Holman v. Criswell, 13 T., 38. Nor facts set up in an amendment. Bryan v. Knight, 1 T., 180.

**Note 70.**—Langford v. Republic, p. 588.

A colonist was not entitled to a grant as head of a family unless his family was resident in Texas. Land Commissioners v. Bell, Dal., 366; Land Commissioners v. Reily, Dal., 381; Land Commissioners v. Walling, Dal., 524; Republic v. Skidmore, Dal., 581; Republic v. Inglish, Dal., 608; Johns v. Republic, Dal., 621; Grooms v. State, 1 T., 568; Republic v. Skidmore, 2 T., 261; Tichnor v. State, 2 T., 269; Lewis v. Ames, 44 T., 319, 345; Lott v. King, 79 T., 292; Hill v. Moore, 85 T., 335; Byrn v. Kleas, 15 T. C. A., 205; Union Beef Co. v. Thurman, 70 Fed. Rep., 965. An unmarried colonist, under twenty-one years of age, was not entitled to a headright grant. Lockhart v. Republic, 2 T., 127. But it will be presumed from the fact that a headright certificate was granted by the proper authority, that the grantee was the head of a family, and evidence is not admissible in a collateral proceeding to show that he was not married and that his family was not in Texas. Johnston v. Smith, 21 T., 722; Bowmer v. Hicks, 22 T., 155; Howard v. Colquhoun, 28 T., 134; Burkett v. Scarborough, 59 T., 495; Capp v. Terry, 75 T., 391; Boone v. Hulsey, 71 T., 176; Hill v. Moore, 85 T., 335; Byers v. Wallace, 87 T., 503. Grant is valid, if the grantee in good faith intended to move his family to Texas. Republic v. Young, Dal., 464; State v. Skidmore, 5 T., 469; Russell v. Randolph, 11 T., 460.

**Note 71.**—Shelby v. Johnson, p. 597.

Person elected to fill a vacancy in an office is entitled to hold it for the statutory period, and not the unexpired term. Bradley v. McCrabb, Dal., 504; Roman v. Moody, Dal., 512; Banton v. Wilson, 4 T., 400. Distinguished in Royston v. Griffin, 42 T., 566.

**Note 72.**—Sydnor v. Chambers, p. 601.

Attachment is an auxiliary process and plaintiff may proceed to judgment when it is quashed. Cloud v. Smith, 1 T., 611; Chevallier v. Williams, 2 T., 239; Green v. Hill, 4 T., 465; Sydnor v. Totman, 6 T., 189; Campbell v. Wilson, 6 T., 379, 392; Moore v. Corley, 4 App. C., sec. 139. The suit abates when writ is quashed if personal judgment can not be rendered against defendant. Raquet v. Nixon, Dal., 386; Savings Institution v. Burrow, 37 T., 88; Stewart v. Anderson, 70 T., 588; Hochstadler v Sam, 73 T., 315; Rogers v. Burbridge, 5 T. C. A., 67. Is a harsh and summary remedy and all precedent conditions must be strictly complied with. Raquet v. Nixon, Dal., 386; Fowler v. Poor, Dal., 401; Sloo v. Powell, Dal., 467; Gregg v. York, Dal., 528; Wooters v. McGee, 1 T., 17; Chevallier v. Williams, 2 T., 239; Caldwell v. Haley, 3 T., 317; Sydnor v. Totman, 6 T., 189; Marshall v. Alley, 25 T., 342; Culbertson

v. Cabeen, 29 T., 247; Sheffield v. Gay, 32 T., 225; Moody v. Levy, 58 T., 532; Evans v. Tucker, 59 T., 249; Stiff v. Fisher, 2 T. C. A., 346; Sarrazin v. Hetmann, 16 T. C. A., 351; Ball v. Bennett, 21 T. C. A., 399; Dreiss v. Faust, 1 App. C., sec. 33; Whitley v. Jackson, 1 App. C., sec. 575; Schwartz v. Burton, 1 App. C., sec. 1216; Scram v. Duggan, 1 App. C., sec. 1269. No presumption will be indulged to supply defects. City Nat. Bank v. Flippen, 66 T., 610; Focke v. Hardeman, 67 T., 173; Perrill v. Kaufman, 72 T., 214; Moore v. First Nat. Bank, 82 T., 537. But literal exactness is not required. Lewis v. Stewart, 62 T., 352.

**Note 73.**—Republic v. Inglish, p. 608.

Colonization law of March 25, 1825, repealed by law of April 28, 1832, and latter by law of March 26, 1834. Land Commissioner v. Bell, Dal., 366; Creth v. Republic, 1 T., 83; Ferguson v. Johnson, 11 T. C. A., 413. Under colonization laws emigration alone did not entitle one or his heirs to land. Creth v. Republic, 1 T., 83; Kennedy v. State, 11 T., 108; Hill v. Moore, 85 T., 335; Ferguson v. Johnson, 11 T. C. A., 413. Liberal construction will be given in favor of grants made in 1835. Elliott v. Mitchell, 28 T., 105. Grants provided for by the Constitution of the Republic and Act of December 14, 1837, applied only to citizens who were in Texas. Land Commissioner v. Bell, Dal., 366; Creth v. Republic, 1 T., 83. A colonist was not entitled to a grant as head of a family, unless his family was resident in Texas. Land Commissioners v. Bell, Dal., 366; Land Commissioners v. Reily, Dal., 381; Land Commissioners v. Walling, Dal., 524; Republic v. Skidmore, Dal., 581; Langford v. Republic, Dal., 588; Johns v. Republic, Dal., 621; Grooms v. State, 1 T., 568; Republic v. Skidmore, 2 T., 261; Tichnor v. State, 2 T., 269; Lewis v. Ames, 44 T., 319, 345; Lott v. King, 79 T., 292; Hill v. Moore, 85 T., 335; Byrn v. Kleas, 15 T. C. A., 205; Union Beef Co. v. Thurman, 70 Fed. Rep., 965. An unmarried colonist, under twenty-one years of age was not entitled to a headright grant. Lockhart v. Republic, 2 T., 127. But it will be presumed from the fact that a headright certificate was granted by the proper authority that the grantee was the head of a family, and evidence is not admissible in a collateral proceeding to show that he was not married and that his family was not in Texas. Johnston v. Smith, 21 T., 722; Bowmer v. Hicks, 22 T., 155; Howard v. Colquhoun, 28 T., 134; Burkett v. Scarborough, 59 T., 495; Capp v. Terry, 75 T., 391; Boone v. Hulsey, 71 T., 176; Hill v. Moore, 85 T., 335; Byers v. Wallace, 87 T., 503. Grant is valid if the grantee in good faith intended to move his family to Texas. Republic v. Young, Dal., 464; State v. Skidmore, 5 T., 469; Russell v. Randolph, 11 T., 460. Titles issued by alcaldes and commissioners after closing of Land Office by Act of Consultation on November 13, 1835 (Gammel's Laws of Texas, vol. 1, p. 541), which took effect immediately on adoption, are null and void. Donaldson v. Dodd, 12 T., 381; Spier v. Laman, 27 T., 205; Parker v. Bains, 59 T., 15. If the title was actually issued before November 13, 1835, making out and delivering the testimonio shortly afterwards did not invalidate the title. Houston v. Blythe, 60 T., 506. Holders of orders for surveys and headright certificates, issued prior to November 13, 1835 could only establish their claims in the mode prescribed by Act of December 14, 1837 (Gammel's Laws of Texas, vol. 1, p. 1404), upon proof of facts enumerated in section 12. Land Commissioners v. Reily, Dal., 381; Land Commissioners v. Walling, Dal., 524; Republic v. Skidmore, Dal., 581; Johns v. Republic, Dal., 621; Jones v. Menard, 1 T., 771; Trimble v. Smithers, 1 T., 790; Land Commissioners v. Raguet, 2 T., 98; Land Commissioners v. Riley, 3 T., 237; Capp v. Terry, 75 T., 391. All certificates returned by commissioners as genuine, but not recommended on account of want of oath required by section 12 of Act of December 14, 1837, were validated and directed to be patented by Act of January 19, 1841 (Gammel's Laws of Texas, vol. 2, p. 528). Whitehead v. Foley, 28 T., 1; Spofford v. Bennett, 55 T., 293. Under Act of February 5, 1840 (Gammel's Laws of Texas, vol. 2, p. 335), patents could only issue on certificate of recommendation from Board of Land Commissioners, and holders of unrecommended land certificates had no standing in court without it. Norton v. Land Commissioner, 2 T., 357; Bracken v. Wells, 3 T., 88, 90; Kemper v. Victoria, 3 T., 135; Miller v. Brownson, 50 T., 583. All surveys supported by recommended certificates valid; without them, invalid. Warren v. Shuman, 5 T., 441; Scott v. Mather, 14 T., 235; Whitehead v. Foley, 28 T., 268. Headright certificate is not color of title, unless recommended. Horton v. Crawford, 10 T., 382; Whitehead v. Foley, 28 T., 268. Prohibition in Act of February 5, 1840, against surveys on unrecommended certificates after May 1, 1840, did not legalize surveys made either prior or subsequently on unrecommended certificates. Warren v. Shuman, 5 T., 441. It seems that surveys on genuine headright certificates are valid, though not recommended by commissioners. Howard v. Perry, 7 T., 259; Hart v. Gibbons, 14 T., 213. But under Act of January 29, 1840 (Gammel's Laws of Texas, vol. 2, p. 313), authority to issue patents on first class

headright certificates, was based on recommendation. Miller v. Brownson, 50 T., 583. Under extension of time allowed by Constitution of 1845, a survey made on an unrecommended certificate prior to January 1, 1844, suit to establish claim could be maintained in 1847. Lewis v. Mixon, 11 T., 564; Hart v. Gibbons, 14 T., 213; Scott v. Mather, 14 T., 235. Under Act of February 7, 1860 (Gammel's Laws of Texas, vol. 4, p. 1410), providing for re-examination of rejected warrants and certificates, a rejection made before limit of time fixed in section 11 is not void, the object of the statute being to give claimants ample time to prove their claims. Durrett v. Land Commissioner, 28 T., 687. Under Act of April 25, 1871 (Gammel's Laws of Texas, vol. 6, p. 962), holders of unlocated certificates were not required to locate them at any particular period between passage of law and January 1, 1875. Laws in force prior to Act of November 29, 1871 (Gammel's Laws of Texas, vol. 7, p. 47), did not require certificate and field notes, to be returned within twelve months after survey. Snider v. I. & G. N. Ry., 52 T., 306; Snider v. Methvin, 60 T., 487. Under Rev. Stats., 1895, arts. 4138 and 4145, survey must be made within twelve months after entry, and field notes returned within twelve months after survey. Von Rosenberg v. Cuellar, 80 T., 249.

**Note 74.**—Saddler v. Republic, p. 610.

[1] Unnecessary averments and allegations not essential to constitute the offense are treated as surplusage in indictments. State v. Washington, 19 T., 128; State v. Moreland, 27 T., 727; Henderson v. State, 2 T. App., 154; Mayo v. State, 7 T. App., 342; Smith v. State, 7 T. App., 382; Warren v. State, 17 T. App., 207; Cudd v. State, 28 T. App., 124; Hammons v. State, 29 T. App., 445; Taylor v. State, 29 T. App., 466.

[2] Affray defined. State v. Washington, 19 T., 129; Shelton v. State, 30 T., 432; State v. Billingsley, 43 T., 93; Pollock v. State, 32 T. Cr., 29; Ex parte Freeland, 38 T. Cr., 321.

**Note 75.**—Chevalier v. Rusk, p. 611.

The rule against multiplicity of suits has special favor in our system of procedure, and a party who can enforce his right in one suit will not be permitted to resort to many. Holdeman v. Knight, Dal., 566; Binge v. Smith, Dal., 616; Pitts v. Ennis, 1 T., 604; Smith v. Power, 2 T., 57; Francis v. Northcote, 6 T., 185, 188; Moore v. Minerva, 17 T., 20, 23; Clegg v. Varnell, 18 T., 294; Blair v. Gay, 33 T., 157; Lyles v. Murphy, 38 T., 75; Bond v. Dillard, 50 T., 302; Goldman v. Blum, 58 T., 630; Rush v. Bishop, 60 T., 177; G. H. & S. A. Ry. v. Dowe, 70 T., 5; Moody v. Smoot, 78 T., 119; Middlebrook v. Bradley, 86 T., 706; Mathonican v. Scott, 87 T., 396; Mathis v. Pridham, 1 T. C. A., 58; St. L. S. W. Ry. v. Moss, 9 T. C. A., 6; Mateer v. Cockrill, 18 T. C. A., 391; S. A. & A. P. Ry. v. Griffin, 20 T. C. A., 91; Wilson v. P. & N. Ry., 23 T. C. A., 706; Cox v. Lloyd, 1 App. C., sec. 123; Vogelsang v. Mensing, 1 App. C., sec. 1165; H. & T. C. Ry. v. Stewart, 1 App. C., sec. 1246; I. & G. N. Ry. v. Donalson, 2 App. C., sec. 238. A second suit may be maintained upon a judgment when a second judgment will be more advantageous than the first. Stephens v. Stone, 94 T., 415.

**Note 76.**—Binge v. Smith, p. 616.

[1] The rule against multiplicity of suits has special favor in our system of procedure, and a party who can enforce his right in one suit will not be permitted to resort to many. Holdeman v. Knight, Dal., 566; Chevalier v. Rusk, Dal., 611; Pitts v. Ennis, 1 T., 604; Smith v. Power, 2 T., 57; Francis v. Northcote, 6 T., 185, 188; Moore v. Minerva, 17 T., 20, 23; Clegg v. Varnell, 18 T., 294; Blair v. Gay, 33 T., 157; Lyles v. Murphy, 38 T., 75; Bond v. Dillard, 50 T., 302; Goldman v. Blum, 58 T., 630; Rush v. Bishop, 60 T., 177; G. H. & S. A. Ry. v. Dowe, 70 T., 5; Moody v. Smoot, 78 T., 119; Middlebrook v. Bradley, 86 T., 706; Mathonican v. Scott, 87 T., 396; Mathis v. Pridham, 1 T. C. A., 58; St. L. S. W. Ry. v. Moss, 9 T. C. A., 6; Mateer v. Cockrill, 18 T. C. A., 391; S. A. & A. P. Ry. v. Griffin, 20 T. C. A., 91; Wilson v. P. & N. Ry., 23 T. C. A., 706; Cox v. Lloyd, 1 App. C., sec. 123; Vogelsang v. Mensing, 1 App. C., sec. 1165; H. & T. C. Ry. v. Stewart, 1 App. C., sec. 1246; I. & G. N. Ry. v. Donalson, 2 App. C., sec. 238. A second suit may be maintained upon a judgment when a second judgment will be more advantageous than the first. Stephens v. Stone, 94 T., 415.

[2] Surety can not be sued, unless the principal has been or is sued simultaneously with him, except when the principal is a nonresident, or can not be reached by ordinary process of law, or his residence is unknown and can not be ascertained by use of reasonable diligence, or is dead or insolvent. The same rule applies to indorsers, guarantors and drawers of accepted bills. Plaintiff can not dismiss as to principal and take judgment against surety, etc., without showing one of the statutory grounds. Rev. Stats., 1895, arts. 1204, 3818, 3819. Campbell v. Beckwith, 17 T., 439; Crawford v. Jones, 24 T.,

382; Burden v. Cross, 33 T., 685; Farris v. Berry, 33 T., 701; Under v. Anderson, 37 T., 550; Muenster v. National Bank, 92 T., 422; Weldert v. Durst, 15 T. C. A., 81; Douthit v. Martin, 15 T. C. A., 559. Where there are several principals, can not dismiss as to one of them and take judgment against surety. Look v. Cornelius, 4 T., 303; Moore v. Jones, 6 T., 227; Barnett v. Taylor, 30 T., 453; Welch v. Phelps & Bigelow Windmill Co. (T. C. A.), U. R. C., 1896. The above rule applies only to cases where plaintiff alleges suretyship, or where it appears from the face of the instrument sued on. In other cases, plaintiff may sue all or a part, and dismiss as to a part. Ritter v. Hamilton, 4 T., 325; Ennis v. Crump, 6 T., 85; Terrill v. Townsend, 6 T., 149; Lewis v. Riggs, 9 T., 164; Keesey v. Old, 82 T., 22; Bute v. Brainerd, 93 T., 137; Jameson v. Officer, 15 T. C. A., 212; Hooks v. Bramlette, 1 App. C., secs. 867, 868 (overruling Unger v. Anderson, 37 T., 550); McDonald v. Holt, 1 App. C., sec. 1014; Head v. Cleburne B. & L. Assn. (T. C. A.), U. R. C., 1893. If one of the principals is a married woman, may dismiss as to her. Shipman v. Allen, 29 T., 17. Right of surety not to be sued unless principal has been or is simultaneously sued, is a personal privilege, and must be taken advantage of by plea in abatement. He can not object for the first time on appeal, that principal was not sued or that suit was dismissed as to principal. Petty v. Cleveland, 2 T., 404; Ritter v. Hamilton, 4 T., 325; Wiley v. Pinson, 23 T., 486; Shipman v. Allee, 29 T., 17; Yale v. Ward, 30 T., 17, 22; Hooks v. Bramlette, 1 App. C., sec. 863; Gamble v. Talbot, 2 App. C., sec. 730; Sherwood v. Jordan, 2 U. C., 610; Head v. Cleburne B. & L. Assn. (T. C. A.), U. R. C., 1893. Where principal is dead, insolvent or beyond court's jurisdiction, the debt becomes an original liability of surety and he may be sued alone. Within jurisdiction, means within reach of process. If principal is dead, surety may be sued before claim is presented to executor. If principal dies while suit is pending, judgment may be rendered against surety alone. Scott v. Dewees, 2 T., 153; Merriwether v. Lewis, 2 T., 340; Ennis v. Crump, 6 T., 85; Walker v. Collins, 22 T., 189; Rutherford v. Harris, 22 T., 166; Foster v. Champlin, 29 T., 22; Aldridge v. Mardoff, 32 T., 204; Scantlin v. Kemp, 34 T., 388; Houghton v. Ledbetter, 37 T., 161; Toland v. Swearingen, 39 T., 447; Boggs v. State, 46 T., 10; Willis v. Chowning, 90 T., 617; First Nat. Bank v. De Morse (T. C. A.), U. R. C., 1894. While executor of principal may be sued with surety, he is not entitled to make nonresident heirs of deceased, principal parties. Henderson v. Kissam, 8 T., 46; Walker v. Collins, 22 T., 189. Judgment against principal merges cause of action, and separate suit can not be maintained afterwards against surety. Wooters v. Smith, 56 T., 198; Bute v. Brainerd, 93 T., 137.